## CARPENTER et al. v. BANK OF CLOUTIERVILLE et al.

### No. 5899.

Court of Appeal of Louisiana.
Second Circuit.
March 31, 1939.

John G. Gibbs, of Natchitoches, for appellants.

Russell E. Gahagan, of Natchitoches, for appellees.

DREW, Judge.

On November 19, 1937, the Bank of Cloutierville instituted suit for $401.87, plus 8% interest per annum and 10% attorney's fees, as the balance due on a promissory note held by the Bank, and to foreclose a certain chattel mortgage given as security for the note. The property sought to be foreclosed was duly seized by the Sheriff and advertised to be sold on January 18, 1938. The defendants in that suit, Conn, Dow, Lloyd, Buffie, Junius and Nathan Carpenter and Clarence Robinson, brought this action on January 15, 1938, alleging payment of the note and asking that a permanent injunction issue forever restraining the sale of the property. A temporary restraining order and a preliminary injunction were obtained, but on trial of the merits, the district judge dissolved the preliminary injunction and rejected plaintiffs' demand that a permanent injunction issue.

As brought out on the trial of the case, the facts are as follows:

In the early part of 1937, the plaintiffs in this suit obtained a loan from the Bank of Cloutierville in the amount of $500 as security for which they gave a chattel mortgage on certain livestock, described in the act of mortgage. The proceeds of this loan having been disposed of, the plaintiffs opened a charge account at the store of Sam Lacaze in Cloutierville in order to complete the making of their crop.

It appears that Mr. Lacaze, in addition to his activities in the mercantile business, is also a cotton broker, ginner and President of the Bank of Cloutierville. As the plaintiffs harvested their crops, they were turned over to Lacaze who sent trucks to haul them to the gin where they remained in his custody. On July 31, 1937, Lacaze contracted to buy for fall delivery six bales of cotton, the price being fixed at 12 cents per pound, strict middling basis. In the above manner, twelve bales of cotton were turned over to Lacaze, six in addition to those he had contracted to buy, which he purchased at the current market price.

When the entire crops had been harvested, turned over to Lacaze and ginned, plaintiffs went to Lacaze's store for the purpose of completing the transactions between themselves and Lacaze. There the plaintiffs conferred with Buddie Masson, bookkeeper and agent of Lacaze, who is incidentally the vice president of the Bank of Cloutierville. They were informed that over and above the amount due on the store account, they were entitled to receive $98.13. Masson drew a check on Lacaze's account, made payable to the plaintiffs, and accompanied them to the Bank where they conferred with the cashier in an attempt to obtain an extension of one year on the note payable to the Bank by applying the amount of the check to the interest to fall due on the note. This request was refused by the cashier, due to the inability of plaintiffs to furnish additional security. The check was paid to the Bank to be applied on the note and plaintiffs went their respective ways. Foreclosure proceedings were instituted by the Bank and plaintiffs brought this action to enjoin the sale of the livestock, under the theory that when the cotton was delivered to Mr. Lacaze, President of the Bank, payment should have been imputed to the note which was secured by the chattel mortgage, under Article 2166 of the Civil Code. This Article which requires payment to be imputed to the debt which the debtor has the most interest in discharging, applies, under its own terms, to those situations in which the parties themselves are silent as to which debt payment is to be imputed.

We are of the opinion that this particular situation is governed by the provisions of Article 2165 of the Revised Civil Code, which provides: "When the debtor of several debts has accepted a receipt, by which the creditor has imputed what he has received to one of the debts specially, the debtor can no longer require the imputation to be made to a different debt, unless there have been fraud or surprise on the part of the creditor."

In Hortman-Salmen Company v. Continental Casualty Company, 170 La. 879, 129 So. 515, 517, the Supreme Court of Louisiana held as follows: " * * * The imputation of payment made by the creditor with the express or tacit consent of the debtor is the same as an imputation of payment by the debtor himself."

It is obvious that the plaintiffs were fully aware that it was the intent of Masson to impute payment to the store account and they accepted the check for the balance due under those circumstances. This is further

emphasized by the fact that they later attempted to secure a renewal of the note, which conclusively shows that they never regarded the note as having been paid. Thus, under the testimony of the plaintiffs themselves, it is obvious that their suit to enjoin the sale of the stock is without foundation.

It therefore follows that the judgment of the lower court is affirmed, with costs to be paid by the appellants.